# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HALLIE EDITH BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-262-RAW-KEW |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Hallie Edith Brown (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 24, 1959 and was 55 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a janitor. Claimant alleges an inability to work beginning February 12, 2010 due to limitations resulting from depression and back and knee pain.

### Procedural History

On June 7, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After an administrative hearing, Administrative Law Judge Lantz McClain ("ALJ") issued an unfavorable decision on February 8, 2012. On July 25, 2013, the Appeals Council remanded the claim for a new hearing and decision. A second administrative hearing was held by the ALJ on January 3, 2014 by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. The ALJ entered a second unfavorable decision on July 18, 2014. The Appeals Council denied review on May 13, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work. He also concluded at step five that Claimant could perform medium work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly weigh the medical opinion of her treating physician; (2) failing to reach an RFC supported by substantial evidence; and (3) failing to perform a proper credibility analysis.

**Consideration of the Treating Physician's Opinion**

In his decision, the ALJ determined Claimant suffered from the severe impairments of a history of back and knee pain and depression with a history of psychotic symptoms in remission. (Tr. 22). The ALJ concluded that Claimant retained the RFC to perform medium work in that she could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk at least six hours in an eight hour workday, and sit at least six hours in an eight hour workday. He also determined Claimant was limited to simple, repetitive tasks. (Tr. 25). The ALJ found at step four that Claimant was capable of performing her past relevant work as a janitor, as normally performed through the date last insured. (Tr. 30). After consulting with a vocational expert, the ALJ determined Claimant could perform the representative jobs of kitchen helper and hand packer, both of which existed in sufficient numbers in the national and regional economies. (Tr. 32). As a result, the ALJ found Claimant was not disabled at any time from

February 12, 2010 through December 31, 2013.  Id.

Claimant first contends the ALJ failed to provide the appropriate weight to the opinion of her treating physician, Dr. Jeffrey Jenkins.  Dr. Jenkins authored a narrative report dated July 6, 2010 which indicates he diagnosed Claimant with schizo-affective disorder and major depression with psychotic features in the past with a current GAF of 35 and a low of 30.  (Tr. 402).  Dr. Jenkins based this diagnosis and attendant treatment upon findings of poor memory; sleep disturbance; mood disturbance; emotional lability; delusions or hallucinations; psychomotor agitation or retardation; difficulty thinking or concentrating; oddities of thought, perception, speech, or behavior; perceptual disturbances; time or place disorientation; social withdrawal or isolation; blunt, flat, or inappropriate affect; illogical thinking or loosening of associations; generalized persistent anxiety; and hostility and irritability.  (Tr. 403).

Dr. Jenkins stated Claimant had tried to go back to work several times but each time she was becoming more and more unstable for shorter periods and became more agitated.  He prescribed Lexapro, Xanax, and Zyprexa, which he described as a mood stabilizer and an anti-psychotic.  Dr. Jenkins opined that he did not see Claimant going back to work despite experiencing occasional

6

periods where she "looks pretty good."  He did not believe she could perform her prior job as a night janitor because being around any people caused her to stress out, start hallucinating, and get paranoid.  (Tr. 393).

On January 5, 2012, Dr. Jenkins also prepared a mental medical source statement on Claimant's functional limitations.  He indicated Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; ability to work in coordination with or proximity to others without being distracted by them; ability to make simple work-related decisions; ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; ability to respond appropriately to changes in the work setting; and ability to travel to unfamiliar places or use public transportation.  Claimant was also found to be

7

moderately limited in an additional eight functional areas. (Tr. 503-05). Dr. Jenkins also predicted Claimant would experience episodes of deterioration or decompensation in work which would cause her to withdraw from that situation and/or experience exacerbation of symptoms due to periodic severe psychosis/mania. (Tr. 505).

Dr. Jenkins also completed a Multiple Impairment Questionnaire which indicated his diagnosis of Claimant's condition as major depression with psychotic features and schizo-affective disorder. His prognosis for her condition was poor and cyclical in nature of mood and psychosis. (Tr. 394). He estimated Claimant's pain as a 4-5 out of 10 and her fatigue as 3-4 out of 10. In an eight hour day, Claimant is estimated to be able to sit for six to eight hours and stand/walk for zero to one hour per workday. She must get up and move around every two hours and for a period of twenty minutes. (Tr. 396). He also found Claimant could occasionally lift/carry up to 50 pounds. Claimant had no significant limitations in doing repetitive reaching, handling, fingering, or lifting. (Tr. 397).

Dr. Jenkins stated that Claimant's medication, specifically Zyprexa, caused her to be sleepy and have poor concentration. He also estimated that Claimant's psychological symptoms would increase if she were placed in a competitive work environment.

8

(Tr. 398). He determined Claimant's symptoms were severe enough to constantly interfere with her attention and concentration. Emotional factors that would contribute to the severity of Claimant's symptoms and functional limitations include pressure at work, being around people, and pressure from supervisors. Dr. Jenkins found Claimant was incapable of working even around "low stress." He opined Claimant would need frequent unscheduled breaks to rest at unpredictable intervals during a work day and he did not see her returning to work. (Tr. 399). Claimant would experience mostly bad days and would likely be absent from work as a result of the impairment or treatment more than three times a month. Dr. Jenkins stated that Claimant would have psychological limitations and would need to avoid noise. (Tr. 400).

The ALJ gave Dr. Jenkins' opinions "little weight" and rejected that they were entitled to "controlling weight". (Tr. 28). His basis for this conclusion is stated as (1) the objective medical evidence, mental status exam findings, and Claimant's description of her daily activities are inconsistent with the limitations found by Dr. Jenkins; (2) the GAF score stated by Dr. Jenkins was not supported by the objective medical record as only a "picture in time" rather than a sign of disability; (3) Dr. Jenkins' opinion was on an issue reserved to the Commissioner; (4)

9

the course of treatment was not consistent with one who is truly disabled as Dr. Jenkins' reported. (Tr. 28-29).

The ALJ acknowledged the consultative psychological evaluation performed by Dr. Melinda Shaver on July 28, 2010. Dr. Shaver noted Claimant had been treated for mental health problems and was on medication which helped with the voices she was hearing. (Tr. 422). After examining Claimant, Dr. Shaver concluded she "does not appear to be experiencing any current mental health problems." (Tr. 424). The ALJ gave "some weight" to Dr. Shaver's opinion as consistent with her mental status exam findings. He then concluded that additional evidence showed Claimant's condition "vacillated for a time after her initial decompensation until she stabilized on medication." (Tr. 30).

The ALJ also referenced a consultative psychological evaluation performed post-hearing by Dr. Robert Spray on March 14, 2014. Dr. Spray diagnosed Claimant with unspecified depressive disorder with a history of psychotic symptoms in remission with her current medication regime and rule out borderline intellectual functioning. (Tr. 516). He noted her activities of daily living including no problems with self-care, driving, walking, planting flowers, shopping, managing finances with the help of her husband, household chores, feeding animals, carrying wood for a stove,

laundry, preparation of meals, and going to church. She enjoys riding a four wheeler on occasion. (Tr. 516). Dr. Spray concluded Claimant's short-term memory was impaired with limited math skills and a possible difficulty with abstract verbal reasoning. He also found Claimant's attention and concentration were mildly impaired but that she persisted well during the exam. Dr. Spray determined Claimant "may have difficulty completing work-like tasks in a timely manner." He concluded that Claimant tends to minimize her psychological symptoms. She denied hallucinations although she acknowledged reporting them and being treated for them in the past. Dr. Spray felt Claimant's presentation was misleading and that she had more mental health impairments than she was willing to share or admit. (Tr. 517).

Dr. Spray also completed a mental medical source statement dated March 14, 2014. He found Claimant to be markedly limited in the functional areas of carrying out complex instructions and the ability to make judgments on complex work-related decisions. She was determined to be moderately limited in the areas of the ability to make judgments on simple work-related decision and understanding and remembering complex instructions. (Tr. 520).

The ALJ gave "some weight" to Dr. Spray's assessment, finding it consistent with Claimant's reported activities and mental status

exam findings.  He gave "little weight", however, to Dr. Spray's opinion that Claimant may have more of a mental health impairment than she was willing to admit, contending he must evaluate the evidence of what Claimant admits rather than what the examiner suspects.  (Tr. 30).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id. (quotation omitted).  The factors reference in that section are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the

12

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The bases provided by the ALJ for rejecting Dr. Jenkins' report are tenuous at best. The objective medical record indicated a fluctuation in Claimant's response to treatment rather than the picture of stability painted by the ALJ. As he noted, Claimant's condition vacillated. (Tr. 30). More importantly, all mental

13

status examiners were consistent in their findings of restriction on Claimant's ability to engage in work related activities. The ALJ restricted the weight afforded these opinions to the extent that it is not clear if he relied upon any medical opinion at all. The GAF scoring provided by Dr. Jenkins is persuasive but not controlling in a finding of disability. It does not, however, provide a basis for the rejection of his opinion. The fact Dr. Jenkins provided an opinion on a functional restriction reserved to the Commissioner, again, does not provide a basis for rejecting the totality of the treating physician's opinion. The course of treatment provided by the treating physician is, in fact, consistent with her condition. Additionally, the rejection of Dr. Spray's statement that Claimant may have a greater mental impairment than she is willing to admit ignores the nature of a severe mental impairment. On remand, the ALJ shall consider further development of the record on this point. Additionally, the ALJ shall re-evaluate the opinion provided by Dr. Jenkins and provide specific reasoning on the weight he provides to the opinion evidence. While this Court might agree that his restrictions on Claimant's functional abilities are considerable, the rejection of his findings was not supported by substantial evidence. Upon doing so, the ALJ shall re-evaluate his RFC findings based upon his

reconsideration of Dr. Jenkins' opinion evidence.

**Credibility Determination**

Claimant also contends the ALJ failed to provide sufficient justification for the degradation of her credibility. In boilerplate fashion, the ALJ found Claimant's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision." (Tr. 27). Lacking from the decision is the tying back of the rejection of Claimant's statements to inconsistencies in the objective medical record.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain

or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

On remand, the ALJ shall provide concrete, specific references to the portions of the objective record which supports his findings on assessing Claimant's credibility. Preferably, the use of boilerplate rejection language will be curtailed.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

16

applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

    DATED this 8th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE